JUSTICE RICE,
specially concurring.
¶17 I concur in the Court’s decision, as far as it goes. However, I believe that the facts set forth in the Certification Order also clearly establish that Atlantic has been prejudiced as a matter of law and that, under application of the principle we have adopted as the notice-prejudice rule, Greytak is entitled to no relief under the policy, as we held under similar circumstances in Steadele. The parties’ briefs contain arguments regarding prejudice. In response to the Certified Question, I would address the prejudice issue, reformulating the question if necessary.
¶18 The Certification Order explains that the directive to give notice to the insurer[1] in the Atlantic policy is "identical” to the one at issue in Steadele. Certification Order, p. 6. About that provision, we concluded, as I have modified the language to reflect the current parties:
This notice is in plain English; it is simple, clear, unambiguous and easy to understand. It sets forth [GTL’s] duty to notify [Atlantic] ‘as soon as practicable’ of an occurrence, an offense which may result in a claim, or if suit is brought against [GTL]. This notice provision was intended to provide [Atlantic] the opportunity to defend its interests and to prevent or mitigate adverse judgments.
Steadele, ¶ 21. We also reasoned in Steadele that "this is not a case where the insured failed to notify its carrier by a few days or where the failure to notify was de minimis. Rather, here, MCHC failed to notify Colony for months after having been served with the Steadeles’ summons and complaint.” Steadele, ¶ 29. Despite the same simple, clear, easy to understand, “in plain English” notice provision that was at issue in Steadele, GTL failed to notify Atlantic of the claim — for a period of time longer than the delay involved in Steadele. Even giving *339 the benefit of the doubt to the “notice” provided by GTL in its letter of May 23, 2011, GTL’s failure to notify Atlantic of the claims stretched over a year, which, as in Steadele, is clearly not a de minimis delay. ¶19 Further, and critically, the extensive delay was not merely “dead time” in which nothing was happening. Like the Steadeles, GTL and the Greytak parties proceeded to litigate without the involvement or knowledge of Atlantic, to its detriment. A year into this effort, GTL and Greytak entered a settlement agreement that erected a potential judgment against GTL for the amount of $624,685.14, plus costs, and purported to do so in an ultra vires act that relieved GTL of its contractual obligations to cooperate with Atlantic. These actions, which are, in my view, sharp practice at best and collusion at worst, undoubtedly prejudiced Atlantic in the same way as the similar actions in Steadele prejudiced Colony Insurance.
¶20 Greytak attempts to shift the blame to Atlantic, arguing that Atlantic’s delay in commencing a declaratory action was not “a reasonable time in which to take action, and as such Greytak was entitled to enforce the settlement agreement,” and any prejudice against Atlantic was therefore rendered irrelevant. Greytak calculates this “delay” from GTL’s May 23, 2011, letter, which it offers as satisfying the notice requirement under the Atlantic policy. Greytak overlooks that this letter did not disclose that an agreement had been reached that released GTL fiom its contractual obligations, did not provide the settlement agreement or settlement documents, and did not advise that a trigger for entry of a $624,000judgment against the insured had been created by the settlement. Unsurprising, Atlantic’s requests for cooperation in the investigation of the matter were thereafter rebuffed by GTL and its counsel, who were then surreptitiously operating under their settlement agreement with Greytak. These events simply farther prejudiced Atlantic and justified the “delay” of which it is accused by Greytak.
¶21 We have adopted the notice-prejudice rule “in order to promote the ‘fundamental protective purpose’ of insurance,” so that “[a]n insured’s technical or illusory failure to comply with obligations of a policy will not automatically terminate coverage....” Opinion, ¶ 14. As the Court explains, the purpose of the notice-prejudice rule is to protect the insured from loss of insurance coverage over a technical violation of the policy when that violation is of no prejudicial consequence to the insurer. Opinion, ¶ 14. The rule is not intended to provide claimants and insureds a litigation Petri dish in which to grow stipulated judgments in the dark while the insured is relieved of its contractual obligations to involve the insurer. The rule does not abrogate the *340 insured’s duty to notify. It merely excuses failure of that duty when a “technical” violation does not prejudice the insurer. Opinion, ¶ 14. Here, GTL’s violation was not “technical.” It was contrived in order to prejudice Atlantic, which it clearly did.
¶22 I would further hold that Greytak does not receive the benefit of the rule.

 The Certification Order actually states that notice was to be given to the “insured,” which is an error. The provision cited from the policy at issue in Steadele, like the one here, required that notice be given to the “insurer.”